Last case of today, United States v. Rogers, No. 24-1024. Mr. Kim, good afternoon. Good afternoon. May it please the Court, Ray Kim for Mr. Jeffrey Rogers. Seated at the council table is Ms. Samantha Stern. If I may, I'd like to request three minutes for rebuttal. Go ahead, sir. The five-level chapter four enhancement for a pattern of prohibited sexual conduct requires at least two separate occasions of such conduct. Here, all of the conduct at issue occurred over the course of several hours in the same place, Mr. Rogers' apartment, on the same day, a day in November, and it involved the same three people, Mr. Rogers and the two minors, C.V. 1 and C.V. 2. Under a plain meaning of the term occasion, and based on the Court's multi-factor analysis in Wooden, this, what happened here, was one occasion of prohibited conduct. Now, you didn't raise this argument at district court, did you? I'm sorry, sir. You didn't raise this argument at district court, did you? I believe we did, Your Honor. You didn't mention Wooden, did you? We did not. To be clear, no, we did not mention Wooden. And Wooden was decided at the time the sentence was given, right? It was. It was. So you didn't raise anything about Wooden in the district court? No. No, we did not. So to address that issue— Well, any argument, just to close the loop, any argument related to Wooden is reviewed for plain error, right? I disagree, Your Honor, because the argument that was raised below was a plain meaning argument about the meaning of occasion, and that is the same argument that we're pressing on appeal. I would point the court to page 1539 of the appendix—this is the transcript from the sentencing hearing—where counsel argued in objecting to the Chapter 4 enhancement that what happened here was a single transaction or occurrence at the same event, at the same meeting, with no intervening break in the action. I think that that language should sound familiar, I respectfully, because it's the same plain meaning language that comes out of— You know, it's just really different if you make the argument with no cite, and you make the argument and say, and the Supreme Court says so, too. I mean, those—on a scale of 1 to 10, one's about a 1 or a 2, and the other's about a 10. And so, you know, it's not the same argument, is it? I believe it is, Your Honor. So I think, on the one hand, I would point to the court's decision in Abreu that pointed out that citation to a specific case is not what preserves the argument for appeal. It's whether or not the district court had the opportunity to address the argument. And I think, again, given the similarity or congruity between the arguments that counsel pressed below in objecting to the enhancement and what we're arguing here, they are the same argument. And I would also point out to the court that I think the argument that the government is making on appeal now about the timestamps on the images of conviction really is the same argument that they made below. The reliance on Fox, the fact that these are images taken at different times as they appear on the pictures or the files, if they're making the same argument now that they made below, Your Honor, I think that's because it's the same argument that defense made below and that we're making here on appeal now. How do you distinguish Lingala? Because here you're citing Wooden for particular factors that it's articulated that help us understand what the term occasion means. In Lingala, where there was new factors that were put forward, we said that wasn't the same argument. If I remember Lingala correctly, Your Honor, I think the issue there is that there was actually two different theories advanced. Below, I think they argued reliability or availability. And then on appeal, they argued—I might have them mixed up, but they argued the other. So there was a completely different theory that was advanced below as opposed to on appeal. This is the same thing, Your Honor. Did you argue below that the definition of occasion is used in ACCA would bear on the definition of occasion is used in the commentary? Because that might be a way for you to bridge the gap if you argued that. No, we did not. Defense counsel did not. But I would also—I would point the court to page 367 of the decision in Wooden where the court does observe that an occasion may encompass a number of non-simultaneous activities. It need not be confined to a single one. And then I think—and this is the part that's important. It says the same is true when it comes to crime. So I don't—I would push back on the idea that the plain meaning analysis in Wooden is limited to ACCA. Well, I mean, it gets really interesting because the structure of ACCA is very different than the structure of this guideline. The text of the guideline does not use the word occasion. The text of ACCA uses the word occasion. If I have the text of the guideline correctly, it uses the word pattern. That's the word in the guideline. And then we get to the commentary, and then the commentary says, oh, hey, pattern can be two or more separate occasions. That's part A. But then part B says, oh, hey, occasion can happen at the same time or in the course of the same event. That part B was not part of ACCA. If part B was part of ACCA, I don't know that the Supreme Court could reach the same conclusion because breaking into nine separate U-Haul things is kind of the course of the same event. So we aren't really like kind comparator here anymore either because you've got an additional term. I mean, the text of the guideline doesn't use the word occasion. ACCA does. That's an obstacle. But then in the commentary, it defines occasion differently than the Supreme Court defined it in Wooten. And, again, that seems to suggest that Wooten doesn't do work for you here. I think maybe and maybe hopefully this goes to your question, Your Honor. My soliloquy. You're kind to call it a question. Yeah. Go ahead. The location of the Chapter 4 enhancement here in Chapter 4, I think, does parallel the idea behind ACCA and the recidivism. We are talking about repeated conduct with Chapter 4 as opposed to the Chapter 2 enhancement that was also applied to Mr. Rogers and that we do not dispute, which is about instances or the conduct, the instant offense conduct. So it isn't – my point only, Your Honor, is that it's not completely a divorce or alien or foreign to the Wooten's analysis, despite notwithstanding the ACCA context there, Your Honor. I just – ACCA doesn't have the following phrase, quote, with regard to whether the occasion occurred during the course of the instant offense, quote. ACCA doesn't say that. No, but I think that all the – so if I understand, all that's happening there is to clarify that the offense or the conduct of – the offense conduct, the instant offense conduct can be one of the required separate occasions. There would need to be another, but that it can supply that. And so I think that maybe does go to the heart of what happened here, Your Honor, is that what we need is that second separate occasion and that I submit we don't actually have here on these facts. Well, you know, so if we focus on the conduct of conviction, there's not necessarily a separate occasion, but wasn't there – didn't the two victims pay a visit to your client about a month beforehand where it appears that at least there's some prohibited sexual conduct took place on that occasion? Why – you know, doesn't that kind of fill in the gap or is that a vacate and remand sort of fill in the gap moment? Well, so for the first part, Your Honor, I understand the government and we agree that they are conceding that that earlier episode that you're referring to does not actually meet the definition of prohibited sexual conduct. So it's not sufficient to supply that missing separate occasion to imply the Chapter 4 enhancement. I know that the government does try to rely on that earlier occasion when they talk about the purpose of Chapter 4, but I think that is a signal that if we're trying to rely on conduct that is concededly not prohibited conduct as the enhancement requires, that's an indication that the enhancement doesn't actually apply here. Let me just ask you about that – what sounds like a waiver argument. Because at page 39 of the government's brief, it says, true that the first occasion of abuse does not appear to meet the technical definition of prohibited sexual conduct. The categorical approach effectively limits what conduct applies in Pennsylvania statutes. The righteous first occasion conduct appears to have transgressed, allow lesser mens rea than federal counterparts, which exceeds to the basis on which the district court made its decision. But looking back and taking that sort of qualified language, you know, for what it's worth, it looks like at Appendix 146 that the government in responding to your position paper on sentencing factors did make the argument that as an alternative, if the court were to determine that the circumstances on the 25th didn't constitute more than one occasion, that the first occasion should be considered, the district court never reached that. That's right, Your Honor. So in that circumstance, if we disagree with your other arguments, should we be remanding for the district court to consider whether the first occasion qualifies or not? I don't I don't think so. And the reason is, Your Honor, I think, as you just pointed out, the government did refer to that in its sentencing papers in support of the Chapter 4 amendment. But what they didn't do was put on any additional evidence to support a finding that that earlier occasion was actually prohibited sexual conduct. And now they do seem to be backing away from that position. I understood that they didn't have occasion to because the district court was firmly resting on this other ground. And so I thought, as Judge Kraft says, well, if that's the if it just was under addressed by the way that the district court went about the sentencing, then why wouldn't remand be appropriate? Well, sure. But I think my point is that the government had given defense counsels the basis for counsel's objection at sentencing below. The government was was on notice that this argument about this argument and simply chose not to respond to it, Your Honor. So I think that if the court were to remand to provide both the court and the government an opportunity to put on evidence regarding the earlier prior episode, that would literally be a bite at the second bite at that same apple because it was presented below the same argument, the plaiming argument. But the district court didn't rule on it below. District courts have to just cut off inquiry on this point. I'm sorry, the district courts have to just cut off inquiry on this point, given given what the judge saw as suitable grounds for the enhancement. That's correct, Your Honor. That's like its first bite at the apple because we just never got there. Well, again, I would put the government was there. They they were they were aware of it. It was raised in their papers. Counsel objected to it at sentencing strenuously. I would say, Your Honor, that using this language that we've already discussed or excuse me, I apologize that I got that. They did not. The court did not rely on it. As you said, the government had the opportunity because it knew that defense was contesting that there were actually two separate occasions, that there was only one and that this earlier conduct did not qualify. I would also note that at trial there was an objection under 412 testimony from CV to who was the other the other minor involved, who was the minor involved in this earlier episode was excluded. So it was not presented. It also was not presented at trial either. So there was there was very limited evidence about what had happened there. The government had the opportunity because it was relying on it. It had the burden to do that. It chose not to do that for whatever reason. And I. So I think that when we look at what the district court did in relying on just the offense conduct from November 2017, what happened there was a collapsing of the two enhancements, the chapter two patent enhancement and the chapter four patent enhancement, where chapter two relies only on instances and chapter four relies on occasions, as we've been discussing. And I think that instances are sort of like a subset of occasions. Multiple instances can comprise or make up an occasion. And what happened here is by relying strictly on the timestamps, as the court did, it didn't actually give chapter four enhancement any work to do. It just it conflated the two, Your Honor. Going back to the first instance, the district court did admit the report to the nurse that was made. Why? One, why couldn't this court rely on that? But at a minimum, why couldn't the district court look to that on remand? Are you referring, I'm sorry, Your Honor, maybe you're referring to there was a state trooper who read something about the first episode into the record? No, the report that victim two, I believe, made regarding the first visit to Roger's apartment. The testimony of Ms. Stockdale? Yeah. I'm sorry. Testimony of Ms. Stockdale? Right. The trooper read the report in, but we're talking about the report that was made. Right. Right. So that. Right. So I don't I don't know that there's sufficient there's sufficient evidence there to support to determine that that it actually is. But that's different than saying that there's no evidence that was put in. The government didn't. I mean, it's sentencing, Your Honor. When they had the new opportunity, having raised that episode in their in their position paper, they chose not to put forth any evidence. You know, one of the things that you said is you said that, you know, the Chapter four enhancements focus on occasion. You know, you're familiar with the Don Bonk decision we did a few years ago in Nasir. Yes. You know, and and so Nasir, you think that still controls? Here, Your Honor, no, I don't think so, because this was Chapter four. And the commentary at issue here was was was drafted by we've written by Congress, Your Honor. So there's not like an agency deference question, if that's what you're asking. Are you? Well, I mean, I'm going there. You're ahead of me a little bit. Yeah. Yeah. Yeah. I'm going there. You're a little ahead of me, though. But I guess I guess at least if we follow Nasir, the first thing that we look to, regardless of if Congress puts its own text into the commentary, which is really an inverted sort of scenario. But if we follow Nasir, the first thing that we do is we look to the terms in the guideline itself. And the term in the guideline itself is not occasion. It's pattern. And we have to run through the Kaiser analysis for pattern. And it may be that a Kaiser analysis, a plain meaning of pattern, is not the same meaning that the Supreme Court gave to the term occasion. Because patterns can occur at the same time. You can have, you know, a pattern of displays that are all contemporaneous. And so why doesn't the analysis, it seems that it's advantageous to you and to your client to start the analysis at occasion. I get that. But why shouldn't the real analysis start with a Kaiser analysis of what pattern means? I think, Your Honor, that if we look at this, it's not just Chapter 4 that addresses pattern. It's also Chapter 2 that says pattern. And so it's and the distinction is between instance and occasion. That's that's sort of the line between the two enhancements, Your Honor. So I think those are the sort of the focal points, let's say, for the inquiry. I would also say that I think that in Perez-Colón, which I believe the government has also pointed out, because the parties aren't contesting the correctness of the commentary here or the meaning and we've relied on it, the court would generally decline to enter into the inquiry that you're asking. Even on plain error review, it's plain error review. We have to do a prong four sort of analysis as well. And so it would strike me that that's much more appropriate if we want to look at the outcome of a case affects the overall integrity and confidence the public would have in a judicial proceeding if it would otherwise be justified under this circuit's en banc decision. So, I mean, I think that if we step back one second to go to prong three, I mean, if to the extent that the Chapter 4 enhancement was not properly applied here in the guidelines was calculated, given the sort of gravitational weight that the guidelines have. So Mr. Rogers' guidelines were 320 to 360. With the enhancement, they dropped to 188 to 235 or something like that, 245, Your Honor. So this is, I think there's, they affect his substantial rights and go to prong four. I think that would certainly implicate the fairness of the proceedings, Your Honor. This, the misapplication of the enhancement here. Your argument about occasion, assuming that's the applicable standard, seems to rest solely on the temporal nature of the word and the geographic parameters that might exist around it. So how much of a break do you think is necessary between these acts of abuse before we have two separate occasions? I think that it's, to sort of use the way that the factors as the wooden court described them, I think we're looking for something that's a substantial gap in time or something that represents some sort of significant intervening gap. So, and I think that factually that it will just turn on facts. Here, what we have are a series of photos taken over about three hours, Your Honor. The conduct itself, though, Your Honor, was, remember, the offense conduct is the use or inducement of a minor to take a visual depiction. It's not, I think as the district court sort of misapprehended the moment that the picture is taken by, and so we, you know, sort of as documented by the timestamp, it's really the continuous course of conduct underlying the taking of the photos, which is that use or inducement. So I don't, sorry, this is a long way of saying, Your Honor, that I think there actually was not really, well, there couldn't have been any sort of gap in time. I think if it had, if there had been a day, if it had gone over a day, maybe, like if they had stopped and maybe gone to sleep or something like that and then come back the next morning or something, that might be. Or what if, in order to take the first photo, there had to be an offer of contraband marijuana, and then in order to take the second photo, there had to be a re-offer of contraband, in order to take the third photo, something further like that, too. Do you think that that would begin to sit there and say, hey, each one of these begins to feel a little bit more transactional, as opposed to maybe just here's some marijuana, and over the next three hours, I'm going to take three photos? If you begin to see a little bit more offer, acceptance, offer, acceptance, that's a little more separate occasion, isn't it? I don't know about that, Your Honor, because I think that it might cut the other way, actually, because if we go to the third factor, the character relation, it sounds like that's the same. It's tying those things together, Your Honor. Thank you. Thank you for your rebuttal.  Good afternoon. May it please the Court, Jonathan Bruno for the United States. I'd like to start just briefly on preservation. As this Court said in Dupree, the fundamental question is, was the District Court given an opportunity to address the argument the defendant now makes? And the answer to that question is no. The record shows that the answer is no, and that's whether the Court understands Rogers' current argument either as a wooden argument or, as he says on reply, as a plain meaning argument. So in the District Court— Why is there any daylight between those two things when Wooden says, I think no less than six times, that it's discussing the ordinary meaning of the word occasion or the natural construction of the term or using that term in the normal way? I mean, over and over, and the one time it makes reference to paying special heed to the purposes of ACCA, it then goes on to say, but in laws and life, it's usually not so difficult to identify an occasion. Given that the term in ACCA is just its ordinary meaning, most cases should involve no extraordinary work. So he made a plain language argument below. He did not, in fact. Rogers' argument in the District Court, there is no reference to plain meaning, ordinary meaning, or even any weight placed on this word, occasions. Rogers' argument, again, at 1539 of the appendix, that sentencing, equated the word occasion with occurrence, event, interaction. And the best evidence for why this argument was not presented below is that the District Court, in its tentative rulings, when the key sentence in which it announces its determination of this question, also does not use the word occasion. The court writes, this is at 1524, the conduct underlying each of these offenses, quote, was a separate, distinct occurrence. And again, the reason for that is that no weight was placed in the District Court on this word, occasions, and on something that was unique about the plain or ordinary meaning of this word, occasions. So there is no question that the argument he's now making before this court is not one that was presented to the District Court. And the result of that, of course, is that plain error review applies. And this court should resolve the case. The most parsimonious way to resolve the case would be at prong two, because at minimum, the putative error here is not plain. There is no binding authority or no consensus of persuasive authority from other circuits that wouldn't, from the ACCA context, informs this guideline, much less that application of Wooden's test to the specific facts of this case, dictates that the conduct on November 25th formed a single occasion. Prong four also has some work to do. You know, this is a case in which Rogers was granted a downward variance. So the District Court tempered justice with mercy here. There was not one but two victims. Rogers, at sentencing, despite all the evidence at trial, maintained his innocence. And, of course, as has been discussed, there's record support that there was an additional day, several weeks earlier, in which he committed hands-on abuse of child victim two. So under the totality of the circumstances at prong four, granting relief years later, on this basis, would detract more from the public reputation of judicial proceedings than denying it. What's the government's answer on the waiver question? In your brief, where it uses the appearance qualification, but seems to step back from the idea that that first instance could conceivably be a first occasion. Well, it's not waived. What we said there, in all candor to the court, is that under the commentary definition, and given the holding in Perez-Colón that the categorical approach applies, that what's in the record about that first occasion doesn't appear to meet the commentary's definition. But there's an important distinction between the commentary as it defines prohibited sexual conduct, and, on the other hand, the commentary that defines pattern of activity. The commentary that defines pattern of activity, as we point out in our brief, was inserted into the commentary by Congress, and that makes a difference. That means that there is no question of deference. Letting that language control at least two separate occasions does not implicate – this is not an agency interpretive rule. This is Congress telling us if you have at least two separate occasions of prohibited sexual conduct, that's a pattern. By contrast, the commentary definition of prohibited sexual conduct was developed by the commission, and so there is a question under Nazir and Kaiser whether to reach that commentary. And, you know, again, we said in our brief that what's in the record about that first occasion doesn't appear to meet the commentary definition, but under Nazir and Kaiser, before this court gets there, it would ask about the phrase prohibited sexual conduct. At least one sister circuit has looked at that question and said prohibited sexual conduct is not ambiguous, and so you don't even get to the commentary. That's United States v. Knight, K-N-I-G-H-T. It's an unpublished Sixth Circuit case from August 2023. So we did not waive, affirmatively waive, reliance on that first occasion, but given that the district court didn't rely on it, and we don't think this court has to go there either, you know, we didn't develop that point. We responded to Rogers' ignoring that first occasion in his opening brief by trying to fill in the record. But certainly this court, if it wished to look at that first occasion and consider it, could do so, and there's enough in the record without a remand to determine that under the plain language of prohibited sexual conduct is just sexual behavior forbidden by law, that what child victim two described as having happened to her on that first occasion qualifies. But if I could just- Does the government concede that if the categorical approach does apply, that some of the Pennsylvania statutes that do require knowledge or intent, even attempt under Pennsylvania law as requiring intent, for example, is it the government's position that there is no categorical match? No, not necessarily. It could be that if this court looks at what's in the record about that first occasion and determines that at minimum it shows there's an attempt, which that's correct, it does require an intentional or purposeful mens rea, that that's a match for the federal counterpart, then yes, this court could rely on that. And we're not saying that categorically in all cases no Pennsylvania sex offense can ever meet that standard. So the question would be which Pennsylvania statutes are implicated there. And again, the reason this wasn't developed at greater length in the district court or on appeal was that what happened on the 25th absolutely is sufficient to show separate occasions of prohibited sexual conduct. And if I could just spend a couple moments on that and highlight really two reasons why. One, within the sort of wooden framework, and then one just thinking about this phrase separate occasions in the context of this sentencing enhancement. So first, wooden. Wooden, again, is an ACCA case. It's concerned not with conduct but with prior convictions for violent felonies or serious drug offenses. And what was missing in wooden, which was a substantial or meaningful gap in time, is exactly what we have here. In wooden, there was nothing in the record that allowed the court to say, well, there was some break. On the contrary, the Supreme Court emphasized again and again that this was a continuous stream of conduct, a single course of conduct, one after another after another, burrowing through from one storage unit to the next. Here, the time between the first episode of production and the second episode production of production is almost two hours. And that's a very two hours is a very long time, especially when understood from the perspective of the perpetrator and the victims. From the perpetrator's perspective, that is certainly long enough for him to come to his senses, curtail his conduct, remove these the 14 and 16 year old girls from his apartment and not re-victimize them. And instead he re-victimizes them. So your opponent, your friend on the other side says, no, the action isn't the timestamps. The action is the use or inducement. And the use or inducement is kind of something that is fuzzier, is blurrier than the timestamps. And the use or inducement, this is all part of one big use or inducement. Hence, it's not separate occasions. It was, in this instance, one visit to his house. No one says they left the house and came back or I don't think. I don't think that's in the record. And so if the focus is use or inducement, not timestamps, maybe two hours can be part of the same use or inducement. What do you say? Well, the prohibited sexual conduct in that case is the production of child pornography, which includes use and inducement, but it also includes actually creating the images. And there is a distinction, even in the way that Rogers uses or induces them during this period. So the first the images from the first production episode show the two victims on a sofa. The images from the second production episode, almost two hours later, show them with sex toys. And there's other testimony at trial that Rogers, at some point during the evening, goes someplace in his apartment and brings out sex toys. And when police later search his apartment, they're found inside a box in his bedroom. And so, you know, he has in between. It's not only time that differentiates these occasions. It's also the character and the character of the offenses, including the nature of the use. What do we do when when the underlying conduct and the abuse is so intertwined with the photographing of the abuse? I mean, it wouldn't. Yes, it was one storage unit to the next. But if you're stopping in each storage unit to collect things, you know, to steal. You know that by your account, it sounds like that would be the necessary break in the action. And the Supreme Court didn't seem to look at it that way. Well, there was nothing in the record in Wooden that allowed the court to make that determination. And its description of the events in Wooden strongly implies that that did not occur. You know, one after another, after another. The court likened it to a barroom brawl in which there are split second gaps between punches being thrown. So this is very different. And, you know, the other point I want to make about Wooden and this pattern enhancement. Wooden, again, concerns prior convictions for various types of offenses, including, as in that case, offenses where there are no victims present. This pattern enhancement is focusing on at least two separate occasions of prohibited sexual conduct, including a minor. So we're talking about crimes in which a minor is present and suffering sexual abuse at the hands of the perpetrator. And, you know, children are not storage units. There is a big difference between what occasions means when we're talking about this context of a victim of sexual abuse being present and suffering abuse. You know, this court said in Paris Cologne in the context of a grouping argument, but it's still very relevant here. Each occasion of abuse inflicts fresh harm, new fear and trauma distinct from the prior harm. Now, in that case, I acknowledge three days separated the occasions of abuse there. But that statement is no less true in this case where there's a sufficiently meaningful gap in time for Rogers to have reconsidered and not revictimized these children and for the children to experience the sort of stop start nature of the abuse. So that is just as true here. There is fresh harm, new fear and trauma. And to treat these occasions. And I'm sorry, I see that my time is up. If I could just finish this thought to treat these occasions as all forming a single occasion because they happened on one night with the same two victims fails to do to do justice to that separate harm that's inflicted. There's no question that the conduct is horrific and that the trauma inflicted on victims is abominable. But what case law, what authority do you point us to where there is in such close proximity in time? A series of events that also involve the same individuals and in the same location where the court has concluded that they were separate occurrences. Well, what I would say is, is if I can make two points in response to that. First, this is why the standard of review is very, is very important. And at minimum, there is no plain authority showing that when you have those factors that your honor just described, there is necessarily a single occasion for purposes of this pattern enhancement. In terms of case law, I think the closest one, and it's not exactly what your honor described, but the closest one in our brief, it does not involve sex offenses. But the Curtis case from the Fourth Circuit, which involved robberies, it's three on the same on the same evening. Now, you know, they're different locations. I acknowledge that. And so it's not it's not on all fours with what happened here. But if you look at the analysis in Curtis, what the court says is the reason the different locations is important is that that's what shows that this perpetrator had a time, had, I'm sorry, the time and opportunity to cease his conduct. And the court also pointed out that different items were taken in these different. So so kind of looking at the third wooden factor, different items were taken in these prior convictions. So that would probably be the closest one. Again, I acknowledge it's not exactly what we have here. But, again, there's no authority showing that this is a plain error. And, you know, neither wooden, nor I'm sorry, neither ACA, nor this pattern enhancement says separate locations or separate victims. It says separate occasions, or in ACA's case, occasions different from one another. You know, again, I think occasions should be understood. Start with the with the text, of course. And this hasn't come up yet this afternoon. But the dictionary definitions of occasions simply means an instance, a happening, an event, an incident, or the time of an event. And so that shows two things. I mean, one, that the Supreme Court, yes, it's talking about ordinary meaning, but it absolutely is providing a gloss on the ordinary meaning. The key difference is that it's not just occasionally abstract. It's followed by the it's preceded by the modifier separate occasion. And so once we get down into that, I think I think your argument has a lot more traction if it's not if there's not the word separate. But if I'm recalling right, the first part of the commentary uses the phrase separate occasion. And that that modifier begins to say that, OK, yeah, maybe maybe it's not that plain meaning that that you're alluding to. And doesn't ACA also say separate occasion? Because there's occasions different from one another. Yeah. So you're right. You're right. This definition does say separate occasions, but separate means distinct. And I think this language has to be understood in the context of a sentencing enhancement that Congress said we want to impose harsh additional penalties on repeat abusers. And Congress told us much like much like ACA wanted to impose harsh additional consequences on repeat offenders. That's right. On people who had prior convictions sufficient to show that they were career criminals. But here Congress makes the policy judgment that two separate occasions is enough to show that this is the type of defendant who poses an ongoing risk to children and who is going to be subject to these enhanced penalties. So that phrase separate occasions, I think, needs to be understood in the context of the purpose of this enhancement. It's also a tiered enhancement. So 4B1.5A applies to offenders who do have a prior conviction for a sex offense. 4B1.5B applies to people like Rogers who have no prior conviction. And so Congress was very clear. In fact, when Congress, the original impetus for this sentencing enhancement was the Protection of Children from Sexual Predators Act of 1998. And the language that Congress used to tell the commission to develop an enhancement along these lines was an enhancement in any case in which the defendant engaged in a pattern of activity involving sexual abuse of children. So 4B1.5B does not require prior convictions. All of the conduct can be part of the offense conduct. This enhancement, we're not even in the realm of 4B1.5B unless you're talking about a defendant who has no prior convictions for sex offenses. Judge Gibson pointed your colleague to the language of whether the occasion occurred during the course of the instant offense. What is what's your understanding of that that phrasing? It's that all of the the pattern of activity can be offense conduct or conduct that occurred during the period in which the offenses occurred. And here, of course, there's not only a single offense. There are five offenses of conviction, including offenses that are separated by this meaningful gap in time. So our understanding is you don't need to look to either a prior conviction or even a prior series of events involving uncharged conduct like the like the prior day, several weeks before the offense conduct in this case. So what do you think? If we're looking to define the term pattern, should we just defer to what the commentary says? Well, this court certainly can consider the language pattern of activity. That's the guideline text. And in fact, as I mentioned a moment ago, that's actually the phrase that Congress used in telling the commission, hey, develop an enhancement like this. So so the court certainly can consider that. But I think because we're in this unique circumstance where Congress also said, hey, for purposes of this enhancement, you've got a pattern. If you've got at least two separate occasions of prohibited sexual conduct, what I would say is pattern cannot be construed in a manner that derogates from the definition that Congress supplied. But Congress supplied that it's very unusual thing is completely inverted. But but Congress supplied that in commentary and commentary was subject to possible deference, but only upon ambiguity. And so if the phrase pattern is not ambiguous, that is capable of two or more separate meanings in the context that it's used, then it doesn't matter that it's Congress or the Supreme Court or whoever else. It says it because it seems what you're saying is if Congress writes something in the commentary, it's not commentary anymore. And maybe that's true, but it makes it it makes it a little delicate because usually the exercise is we're just looking at the text of the guideline and we're thinking of the the commentary is kind of, you know, helpful. I agree it is a very unique circumstance in preparing. I came across an article by then Professor Bevis, who described it as a dramatic break from the normal way of doing things. And I think that's I think that's right. It is very meaningful, though, because, again, as this court described in the Haggerty case recently, when Congress makes a policy judgment and and gives us text. It gives us language through its own statutory enactments, saying, you know, here's here's our policy judgment, here's what should happen. The role of the judiciary is to faithfully interpret that text in a manner that's that's true to the words and true to the purpose of that congressional action. And I think I think that's true, whether we're talking about, you know, here in the Protect Act. They said application note. However, it was numbered at the time, I think for B. Is amended to read as follows. Right. And and I think also the language of what's in that paragraph of the statute is very important. They didn't just say Congress didn't just say, you know, of course, you can consider these factors or these circumstances or whatnot. It Congress said a pattern of activity. Exists. I'm sorry, this is this part is not verbatim, but in effect, a pattern of activity exists if the defendant engaged in at least two separate occasions of prohibited sexual conduct with a minor. Look, a lot of what you say makes sense to me. But here's the thing. Congress very, very, very quickly could have just asked that the guideline themselves be modified. And I think they did that in other provisions in the Protect Act where they didn't say modify the commentary, modify the guideline itself. And so exact same act. I want to say it's acceptance responsibility principles that said, hey, write it this way. But here they they directed the focus to the commentary. So it seems that there's like one of two readings. One doesn't matter. Congress viewed the two as interchangeable or two. Congress thought there was a difference between where it amended things and that the guidelines meant something and the commentary meant something. And by parking this one in the kind in the guidelines and in the commentary, doesn't that show that Congress, at least in this instance, intended to respect the primacy of the guidelines? I think what it shows is that the policy judgment that Congress disagreed with and that it wanted to change in this case was in the commentary. The text applied exactly the language that Congress had previously offered in the 1992 act, which was prohibited. I'm sorry, a pattern of activity that that's what was in the text. The commission put that in the text. And so Congress was happy with the text. The text said the right thing. The commentary said by Congress's lights, the wrong thing, because it required at least two victims. And what Congress then says is. This application note is amended to read as follows. You know, here's here's our judgment about what a pattern of activity means. So I do think that the fact that Congress did that means that that language has to control. Act of an agency of its own role. And we simply do not have that here. So for all those reasons, we ask that the court. Thank you. I'd like to, if I may, start by pushing back a little more on the plane air question. I heard my friend refer to, again, Appendix 1539, which was defense counsel's objection to the enhancement and his use of the words occurrence or event to describe what happened here. I say the same or single occurrence or event rather than using the phrase plain meaning or wouldn't. But I would point the court to page 367 of wouldn't where the court says, you know, we would say that under the plain meaning of occasion, Mr. wouldn't breaking through those 10 units happened on the same occasion. And the court says that usage fits the ordinary meaning of occasion. The word commonly refers to an event occurrence happening or episode. So my point is simply that the plain meaning analysis of wouldn't it's using words like an event and occurrence as synonymous with occasion. And that's precisely what defense counsel here raised at sentencing when he objected to the chapter for enhancement. With respect to the gap in time and whether the two hours gave Mr. Rogers time to stop and reflect. I'll start by saying that I don't think that's not in. In wouldn't, for example, so there are 10 storage units there. It's not clear from the fact. But my guess is that he wasn't simply Mr. wouldn't was not simply walking through the units as if they were open doorways through them. He was having to break into each one of them, which took time. So it's not as if the facts in wouldn't are describing a scenario where someone might have had time to stop or or to think about things. Is it proper? The United States argues that the proper analogy here between minor victims of sexual assault is not warehouses. Do you agree with that? Because it seems that the opportunity to pause and reflect, given the harm that's being done here, might be more significant. In other words, the character might want to dominate instead of just the temporal and geographic limitation. Sure. So, of course, I don't mean to diminish the seriousness of the conduct here. I think what I would say is that the chapter two enhancement to which Mr. Rogers was was subjected does capture the harm. Because that was based on the production conduct. So that five level enhancement that he received under Chapter two does account for that. If I guess I'll be your honor. I know that the government decided the decision in Curtis also for this idea of giving someone or someone having time to stop and reflect. I would just to clarify or provide a fuller picture. It was the same night, but the houses that were robbed, there were one point nine and seven point three miles apart. So there was actually considerable distance. Presumably it took them some time to go from place to place. I don't. That's not what happened here in Mr. Rogers case. We had three people sitting together in his living room for several hours. But again, this is just I mean, there's a fixation on the temporal measurement, which I don't think anyone disagrees. Wouldn't facts deal with a series of identical activity? There's break ins, there's robbers, there's break ins. OK, so it's all basically argued with the same course of conduct. As Fitz pointed out, you have inducement through the presentation of dangerous substances, intoxicating stimulants. There is then the actual sexual abuse. And then there is the permanent recordation of sexual abuse that can then perpetuate the harm for all eternity by the mere existence of those images. So why is that all one course of conduct when it seems like it's three separate courses of conduct, unlike the robberies that are in what? Well, I mean, I think that. It's there's no again, I mean, as just I think, as you said, it's just with Judge Fitz, excuse me. There is a continuous course of conduct. Again, I don't know if you're maybe it is still. If we're talking about the harms, the individual harms coming from the separate instances of the photos, that is still chapter two, if that's what you're asking, Your Honor. If the robbers in Wooden had stopped and encountered a security guard and engaged in a firefight and killed the security guard, is that all part of the same occurrence in your mind? I think the appearance of a security guard might be to speak in the parlance of wouldn't might be a significant intervening event. We have someone who was not previously there suddenly showing up and engaging. It's always about the external acts. It's not about the defendant's conduct. Right. Because it's not the murder you're focusing on in the answer. It's the fact that a guard appeared. And so that might make the difference in your analysis, I think, in this particular hypothetical. Yes, Your Honor. It would be about that. So since we're in the realm of hypotheticals, here's a question. I don't know for a fact, but in Wooden, my visualization of Wooden is that the nine storage units were all kind of the same size in the same place. Like I don't get the sense that they robbed the mini storage unit, then they broke into the small one, then the medium one, then the large, then the extra large. I get the sense that it was really just nine of the same size. But do you think the Supreme Court would have reached the same result if they would have started with maybe the personal safe caliber unit, then gone to a bigger one, then a bigger one, then a bigger one? That just seems to feel like it reflects a degree of emboldening of the criminal activity. When you when you snuck by with the small one. Now let's try the medium one. Now let's try the big one. And so maybe the thing that's kind of unusual about Wooden is that it's kind of static. It's like the same things. But if the sexual abuse here and the images taken reflect a degree of maybe an emboldening of the defendant to get the two child victims to do things, I think are probably more increasingly disturbing. Doesn't that make Wooten kind of the easy case, at least in my visualization of it? It's nine in a row, nine the exact same. It's not small to extra large in Wooten. Does that matter at all or is it just the fact that they were all storage units and doesn't matter that it's just the fact that it's two child victims and hence it's all the same? So I think I understand your question to be about really like a difference in kind as the image. Well, maybe difference in degree becoming difference in kind. Think of it that way. I think that and again, not wanting to diminish the severity of Mr. Rogers conduct. I think that it's all prohibited sexual conduct, which is what the guideline requires, the enhancement requires, excuse me. So it's not that we're looking at was it one type of image being depicted versus another type of image. Well, he might think it's a little even he might think it's a little worse because he had to go to his bedroom and get some sex toys and bring them out. You know, he didn't you know, maybe maybe you give you give true serum to Mr. Rogers. He might say, yeah, that was graduating in a way that I just I don't know. I kind of like every now and then the Supreme Court gives a photo on on some of its opinions. I kind of wish there was a photo on Wooten. So I knew what those those those storage lockers were like, were they all the same or not? But but here I think it's at least arguable that this is kind of, you know, descent into lower levels of depravity in a way that, you know, Wooten was just static levels of depravity. I didn't mean to interrupt, but I think I think another another way to respond would be that if if Congress is unsatisfied with the application, they certainly could change the enhancement of the guideline to reflect that or capture that as it stands, though, your honor, it is all prohibited sexual conduct. That's that's what it is. They're not making a provision for sort of what you're maybe sort of. So you think Wooten would you think the Supreme Court would reach the same result? If it started with just a small locker robbery and went to a medium, then then all of a sudden they're they're looting the garage that has Rolls Royces in it and locking those out. It starts with robbing a pocket watch and it and the ends with with leaving with Rolls Royces. You think that they'd say, yeah, it's all the same. I think I think I do think that it still might very well come out as the same occasion, your honor, because if if they're going through from one, I guess I don't know, like one room or one locker or showroom or something, storage area like a garage or something, I think if they're just going through, I think they're they're they're coming upon what they're coming upon, your honor. And it's it's all still part of the same occasion, I think. OK, thank you. Thank you. Thank both counsel for this afternoon and we will take this case under advisement.